## THE CITY AND COUNTY OF SAN FRANCISCO v. DRURY J. TALLANT, WILLIAM HOOPER, JOHN MIDDLE-TON, HENRY HAIGHT, AND WILLIAM M. LENT, (COMMISSIONERS OF THE FUNDED DEBT OF THE CITY OF SAN FRANCISCO.)

The commissioners of the funded debt of the city of San Francisco are not private agents; they are public officers, clothed with important trusts, for the due administration of which they have executed bonds, with security.

The rule which governs in this case, and alone entitles the parties to intervene to restrain the proceedings, or control the action of the trustees, is, that the fund is in danger of being wasted or impaired; or, that a liability will be incurred, or an injury done by threatened or probable malfeasance, for which the agents' bond or personal responsibility would afford no probable or adequate redress.   Until this is shown, no injunction can issue to prevent them as such commissioners from receiving the trust-fund.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

The facts sufficiently appear in the opinion of the Court.

*F. M. Haight* for Appellants.

We beg to call the attention of the Court to some general principles which apply to the relations of trustee and *cestui que trust*.  In Story's Equity Jurisprudence, § 1289, the general principle is stated as follows:

"It is not indeed every mistake or neglect of duty or inaccuracy of conduct of trustees, that will induce Courts of Equity to adopt such a course." (That is, the removal of trustees.)  "But the acts or omissions must be such as to endanger the trust-property, or to show a want of honesty, or a want of a proper capacity to execute the duties, or a want of reasonable fidelity."

"Fraud, negligence, or a willful breach of trust, will alone justify the removal of a trustee."   Thompson *v.* Thompson, 13 Monroe, 161.

"Trustees acting with good faith are treated with liberality and indulgence, and if there be no willful misconduct or fraud on the part of an executor or trustee, he will not be held responsible for a loss, especially when he acts with the advice of coun-

sel." Thompson v. Brown, 4 Johns. Ch. R., 620, and cases there cited.

It is not competent for the Court of Chancery to appoint trustees in place of those created by legislative act. Collins v. Rideout, 7 Gill & John., 1.

"Independently of statutory authority, it is held that Courts of Equity can not remove a trustee of an incorporation, even for breach of trust." Willard's Equity, 742; 9 Barbour, 65; Robertson v. Bullions, 1 Kernan, 243.

This Court can interfere where the fund is in danger, and can restrain the doings of the trustees until adequate relief is provided.

[Mr. Haight then proceeded to argue the various allegations in the complaint at considerable length.]

*F. P. Tracy* for Respondent.

1. ·The Court has power to restrain the defendants from perpetrating the abuse of which they have heretofore been guilty. They must administer the trust according to its terms. Story's Equity, § 1276. The power of the Court over the commissioners is plenary, notwithstanding the trust is created by statute. Hill on Trustees, 275.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This is an appeal from an order granting an injunction restraining the defendants, as commissioners, under an act of the Legislature of May 12, 1851, from receiving moneys provided to be paid to them by the act called the "Funding Bill." Conceding that the plaintiffs have the right to sue out this proceeding, and that the city and county, under the act of 1851, are interested in the fund paid to the commissioners after the same has gone into the hands of these trustees, still, on these concessions, we think the case made by the plaintiffs fails to show any just claim to the summary power invoked by them.

The defendants are not simply private agents; they are public officers, clothed with important trusts, for the due administration of which they have executed bonds, with sureties. It is not shown that these bonds are insufficient, nor that the defendants are misappropriating the trust-fund, nor that it is unsafe in their hands. If this were shown, upon the supposition that the plaintiffs have the right to interpose, the municipal officers would show themselves guilty of the dereliction they charge upon the defendants, for they seek only to restrain the payment of the money now in the municipal treasury to the commissioners, and this sum constitutes only a portion of the fund; leaving the large remainder in the charge, and, if they are unworthy or incompetent, to the mercy, of these trustees.

The rule which governs in such case, and alone entitles the parties to intervene to restrain the proceedings or control the action of the trustees, is, that the fund is in danger of being wasted or impaired. Nothing less than this could justify a Court in interfering with duties cast upon public officers by the law. Those trustees receive their authority from the statute, and are subject to its requirements, and bound to fulfill its provisions. They have executed bonds, and given the required security for the fulfillment of their duties. Unless, therefore, it be shown that the fund thus entrusted to them is in danger, it is not perceived why any different rule should be applied to these officers than those which apply to the State Treasurer, or to administrators, or any other class of officials charged with pecuniary trusts. It is true, that the fund may be in danger from various causes : from the dishonesty of the agents; from a reckless course of management; from positive acts of mal-administration, or the like. But the acts which would justify such a remedy as that invoked, must be such as to show that a liability will be incurred or an injury done by threatened or probable malfeasance for which the agents' bond or personal responsibility would afford no possible or adequate redress.

It is true, that many acts of abuse in the management of the fund are charged in the bill; but they have been either denied or explained in the answer. And these explanations, whether sufficient to exonerate the defendants from legal responsibility, (as to which we express no opinion,) are certainly not inconsistent with integrity of purpose on their part. Nor is it pretended that the defendants are going on now to do, or threatening to do, any acts of malfeasance or misfeasance which, if not prevented, will affect the safety of the fund in question. Most of the acts charged are in the past, and even if presently threatened, it is at best questionable whether the proper proceeding would not be to restrain the particular acts complained of, instead of seeking to enjoin the payment of money provided by law to be paid the defendants.

The charges made by the bill are numerous, and run through a series of years, six or more; but, whilst some of these present serious questions of the power of the commissioners to do certain acts and pay certain moneys, yet the case made by the bill and answer fails to show, what is indispensable to maintain the injunction, that the fund is in any danger of loss. If the commissioners have paid out moneys without authority of law, and in violation of their trust, they may be held responsible in the proper proceeding; but it is not shown that the bonds executed by them are insufficient to secure the enforcement of their responsibility in this respect.

The ground most pressed in the argument at the bar was the refusal of the commissioners to exhibit a report to the municipal

authorities, showing the condition of the fund and their acts in respect to the trust, etc., as required by law. But this statement is, in effect, denied by the answer, which asserts, moreover, that their accounts have always been open to inspection, and have from time to time been examined by the officers of the former city government, and by grand juries, and that they have invited examination by the present government, and personally solicited the late and present chairman of the finance committee, and president of the board of supervisors, to make examinations, which they have declined to do.

It is a significant fact, that the only alleged instance of loss incurred by the commissioners, out of the many loans and investments by the board, is a loan of $12,000 on the security of some water-lots; and even that is not hopeless;—and a further sum of $1900, balance due deposited with Page, Bacon & Co.; but this is denied. It is charged that some $20,000 have been paid, or agreed to be paid, counsel, for defending the pueblo title; and that some $5000 or $6000, probably, have been unnecessarily paid in expenses; but, for these sums, if the commissioners are liable for them, a sufficient security is afforded by their bonds; and it certainly can not be assumed that any fraudulent motive actuated the board in this respect; nor is it even shown that these acts are threatened to be repeated; and, if they were, it is not clear that this would authorize the proceeding, by injunction, to stop the fund on its way to the board. Wherever judgment is trusted, it is liable to be deceived; and trustees, fairly exercising their discretion in the administration of such trusts, are not responsible for unintentional errors. Mistakes will sometimes be committed—and if the officer be removable for such errors, it would be impossible to have such trusts as this administered. But, giving the fullest effect to the charges in the bill, in these particulars, it seems to us impossible to hold that this fund is shown to be in any such danger as to authorize a Court of Chancery thus summarily to interpose between the law and the commissioners, and inhibit them from doing the acts and exercising the functions which the statute has cast upon them.

The effect of the injunction is to operate as a removal of the commissioners, so far as the fund is concerned, which the process affects; and, if we concede that trustees, constituted as these are, by statute, can be removed by a Court of Chancery—a proposition which is, at least, somewhat doubtful—(see 7 Gill & J., 1; 9 Barb., 65;) yet the rule, as applied to ordinary trustees, is, that the acts or omissions must be such as to endanger the trust-property, or to show a want of honesty, or a want of a proper capacity to execute the duties, or a want of reasonable fidelity. (Story's Eq. Jur., § 1289; 13 Monroe, 161.)

The order granting the injunction is reversed, and cause remanded.